and the next case on the calendar is United States v. Wells. Speak without voice. May please record. My name is Daniel Cook. I'm here on behalf of Mr. Wells, who was the federal habeas petitioner in this case. The issue presented, or the two issues presented by Mr. Wells, are very precise habeas issues. His contention was that there was ineffective assistance of counsel of his retained attorney because his retained attorney had an actual conflict of interest by payment of his legal fees by a co-defendant in this drug conspiracy case, and that the conduct of his retained counsel, Mr. Abraham, adversely affected Mr. Abraham's performance. It is not a straight, strickland, ineffective assistance of counsel claim, where one would not only have to prove ineffectiveness, but you'd have to show prejudice due to the ineffectiveness. The rule in the Ninth Circuit, since the Manholt and Miskinis cases of over 10 years ago, is in an ineffective assistance case where there's an allegation of actual conflict with adverse effect. Prejudice is presumed, and it's not an element to proving ineffective assistance. The district court judge found there was no conflict, and if there was a conflict, it had been waived and held there was also no adverse impact, all questions of law, or mixed questions of law, in fact, subject to a de novo review standard. I want to deal with waiver of the conflict in the first instance. Let's assume there was a conflict. The judge said, it's been waived. Mr. Abraham came in and said, I'm your lawyer. My fees are being paid by your co-defendant, Mr. Jones, through his counsel. Let's assume that's not true, and go to the next issue. Let's assume what's not true. It's not true that there was a waive. All right. I think that's clear from the Schwader case. Let me get to, was there a conflict? The evidentiary record here shows unequivocally, contrary to the judge's finding, there was a conflict. And that conflict was, and Mr. Abraham admitted, Mr. Wells didn't pay his fees. Mr. Jones did through Mr. Jones's counsel. In the Quintero case in this Court, which was ---- But from what do we have the impression that there was any ---- I'm not sure whether after making this there really are two inquiries or one, but ---- There's not. But it certainly reads as if there are two, and let's assume there are two. An actual conflict, it seems to me, means that not only were these two people represented by the same lawyer or paid by the ---- or did one pay the others, but they had adverse interests. How do we know what adverse interests they had? Well, that's not the test, but the adverse interest is ---- Well, it seems to me to be the going-in test, right? Was there an actual as opposed to a potential interest? People ---- conflict. You can have two people represented by the same lawyer, but they have exactly the same interests, so they don't have an adverse ---- there's no adverse ---- there's no actual conflict. The adverse ---- the adverse effect or the actual conflict, I agree, Mickens takes what the Ninth Circuit had as two parts of the test and makes them one, is Mr. Abraham was beholding to Mr. Jones. Mr. Abraham had a policy not to represent people who wanted to cooperate with the government. But only ---- which only matters if he wanted to cooperate with the government or might have wanted to cooperate with the government. But he had ---- Or had some reason why he should have wanted to cooperate with the government. We don't even know that he knew anything about Mr. Jones that would have been helpful to the government. Well, but Mr. Abraham never discussed that issue with him. He said, I don't represent snitches. He had an obligation. He had an obligation. There's nothing in the record to indicate that he wanted to plead guilty, that he had opportunity to plead guilty, that he had any information that would have been adverse to Mr. Jones, that he could have used anything adverse to Mr. Jones. Is any of that in the record? There's Mr. Wells' declaration that if he had been advised of both before he went to trial, if he'd been advised that that was an option that he could do ---- Which the judge disbelieved, right? The judge found it not credible. So do we ---- Well, but Mr. Wells had a ---- the record shows Mr. Wells in all of his criminal cases, of which there were many, had always pled guilty and accepted one case he'd gone to trial. But we would have to reverse the district court's fact-finding for clear error on that ground? I don't think it's clear error. I think it's de novo review. It's a mixed question of law and fact. But the record does show ---- The question of what he would have done is a fact, isn't it? But he was never advised of his options by his lawyer. The Leontie case in this court on a straight ineffective assistance of counsel says a defense lawyer has an obligation to his client, whether client says I don't want to testify ever or not, to at least discuss the issue with him intelligently. Mr. Abraham admitted he never did that. They had a trial. Mr. Wells got convicted. And this was a pre-guidelines case. And if we wanted to run this through a Strickland standard, we could do it and see if there was prejudice. But you're asking us not to do that. Right. You have to show that there was an actual adverse effect. Right. And the next part of that adverse effect is Mr. Wells gets convicted of a number of counts that ultimately result in a 45-year sentence. The jury hangs this to Mr. Jones. Does Mr. Abraham come to him and say, well, gee, now you've been convicted. You're looking at a long sentence. We should talk about you agreeing to testify against Mr. Jones. But there's nothing ---- But where I get stuck is there is nothing in the habeas record in district court that suggests that Mr. Wells had anything that he could have used to entice the government to argue, to deal with him. Is there any indication that he had any information on Mr. Jones that would have been useful to anybody? The record doesn't precisely say what that information would have been because he never had the issue presented to him by his lawyer, who had the ---- But in the habeas, if you were trying to demonstrate that there was an actual conflict, i.e., that he actually had an interest in turning on Mr. Jones, he would have had to have some information to turn on Mr. Jones with, right? And the government's theory in this case was that they were in cahoots together and Mr. Jones sort of operated in the background and Mr. Wells was the up-front person in the manufacture of the methamphetamine. Maybe he had no information to turn on him with. But he never pursued it at all. I know, but on the federal habeas, you haven't demonstrated. You could have come into the federal habeas and demonstrated that, and you didn't. But we're not required to. That ---- The adverse effect was the conduct of counsel. Whether that would have made a difference in the trial or not is a harmless error analysis that's the prejudice burden that we don't have to meet. It's adverse. Excuse me? It may not have been adverse. Well, but it's counsel ---- The adversity is being paid by the co-defendant's counsel and telling Mr. Wells, we're going to trial, regardless of whether that's in your interest or not. He doesn't even discuss that issue with him. And after Mr. Wells is convicted and Mr. Jones has to be retried, he never discusses it. This record doesn't show that under no circumstances would an offer ever have been made to Mr. Wells. One wasn't, in fact, made because Mr. Abraham never pursued at all. In the Leonsi case, this Court said that's ineffective assistance of counsel. Here I'm saying the motivation for that was not only was it a policy of Mr. Abraham's that was, I think, unethical and ineffective, but it was because he was being paid by Mr. Jones who didn't want Mr. Wells testifying against him. The second part of it is a declaration filed in support of a severance motion from Mr. Jones that basically said Mr. Jones wasn't involved in this after 1985 because it had supported a statute of limitations defense that Mr. Jones would have had. Mr. Abraham was asked, did you discuss with Mr. Wells whether it was in his interest to make that declaration saying basically I was involved and he wasn't? No, I didn't. Did you discuss with him how it was in Mr. Jones's interest?  And he said he wanted to do it. It was known and not contested that these people were involved together in a enterprise. Whether it was a legitimate or illegitimate enterprise was the question, right? Yes. Therefore, by saying that he stopped being involved in whatever it was as of a certain date, how was that adverse to your client? Because the government's whole argument in this Court saying the evidence on the direct appeal was overwhelming is they were involved in the criminal activity again. How can Mr. Wells say he wasn't involved unless Mr. Wells was? That's the point. But the declaration doesn't say anything about criminal activity. It just says activity. And we know they were involved in activity together. That was never contested. Right. And the government was saying that that was criminal activity. The real point of it is when asked the question, how was he ‑‑ I'm asking how the declaration was adverse to him when everybody knew that they were involved in an enterprise together, and the only thing the declaration goes to is when it's stopped. The adversity is ‑‑ Not his criminality. The adversity is it was not in Mr. Wells's interest. Mr. Abraham could articulate no reason why it was in Mr. Wells's interest, and he never discussed the issue with him. One last thing I'd like to mention. My time is just about up. The judge also drew an adverse inference against Mr. Wells for asserting his Fifth Amendment privilege as to the relationship between Mr. Wells and Mr. Jones. Absolutely incorrect. At pages 100 and pages 117 to 118 of the evidentiary hearing transcript, the questions that Mr. Wells had initially asserted the privilege to were answered. He said, I had the falling out in 1985. I didn't talk to Mr. Jones again until 1991 after the charges had been filed. After giving those answers, the prosecutor said no further questions. The prosecutor never asked ‑‑ I didn't understand it, but that is this. Presumably the reason why he was able to draw an adverse inference is because of an underlying concept, which, as far as I know, we've never held in this circuit, that on a habeas, there's a waiver of Fifth Amendment rights, and he has to answer. Is that right? It's not a blanket waiver. It's just a matter directly related to the allegations of his petition. Okay. And ours related only to actual conflict of interest. But if the judge believed that this was not within ‑‑ was within the waiver, essentially, then why didn't he just order him to answer? Why did he draw an adverse inference? I don't know. I don't know why he did it that way, but that is the way he did it. And what I'm saying to you is Mr. Wells ultimately answered the questions, and the prosecutor stopped at that point and didn't ask him, well, was the money Jones paid your money? What was your relationship with Mr. Jones after 1991? He stopped. No further questions. So the adverse inference is a totally inappropriate ruling for the judge to have made. Thank you. Good morning. My name is Bernie Hubley. I'm an assistant U.S. attorney from Helena, Montana, appearing here on behalf of Mr. Sikora, who handled the evidentiary hearing and wrote the brief. Mr. Sikora is unable to attend due to other commitments. My reading of the record reveals that what we have here is a case of a theoretical argument by Wells regarding a theoretical division of loyalties. We really have no adverse interest between the parties because the parties entered a joint defense agreement, number one, and number two, we have a defendant who was predisposed, in fact, clearly articulated no interest whatsoever in cooperating with the government. You agree that there was no waiver here? Pardon? You agree that there was no waiver? What I think the judge has done is he's transposed the names. I think the judge was convinced that there was a waiver because there was a disclosure up front in terms of a request through Sid Abraham, do you want to participate in a joint defense agreement, answer yes, and then secondly, I don't represent people who seek or who want to be snitches. Do I have a problem here or worse to that effect? When Wells, knowing that, said no problem, no problem, then back in April of 91 and in his deposition said, I'm not a snitch, I'm never a snitch, I'll never be a snitch, so it didn't matter, then I do think we have a waiver. The paragraph in the judge's order I think has the names transposed, but I do think that the judge felt that there had been informed consent and a waiver. But I think while you can decide that or consider that, the point is there's no adverse interest here. There was a mutual agreed interest to put the government to its test, and by agreement, the defendants say we're --" Nothing changed. Mr. Wells is not a snitch. Changed is at that point there was no point in a joint defense agreement. If Mr. Wells had any information, it might well have been in his interest to use it at that point. If he had. I had a lawyer, however, who was being paid by the other person and who wouldn't represent him and didn't even ask him whether he was interested in considering whether there was anything he could tell the government that might be useful in convicting Mr. Jones. We have to speculate on two things. Number one, that he had something, as the Court pointed out before. And number two, that he wanted to use it. And quite frankly, we can't decide this appeal on speculation. And I think the facts and the clear tone of the record is to the contrary. Mr. Wells was not about to offer anything, and the government was not about to offer anything. So consequently, we are in this theoretical area of what ifs and maybes and how abouts. But we have no concrete evidence that there is an adverse interest here. And I think that it is a matter of fact that Wells was not and is not interested in cooperating with the government. Therefore, how can we base our decision here on something that just couldn't be? And that's what counsel, I think, is advocating is that there's ineffective assistance here because the attorney should have sought something that could never be, because Wells was simply not going to cooperate, again, making the assumption that he had something to offer. What did testify that he would have pled? I mean, he said that. The judge didn't believe him. That's right. And I caution this Court that that's a credibility finding and that we shouldn't go there. And it makes sense. I mean, all of a sudden, years later, he now says, gee, if I would have known that, I certainly would have acted. But he was very adamant out front. I am not about to be a snitch. I am not going to do that. What was Abraham to do? The government wasn't offering anything, and he basically professed and proclaimed, I'm not a snitch. I am not going to help the government. It seems to me that that theoretical suggestion that there might be something there is really elusive. In fact, it is an illusion. The part of the case that is particularly troubling is after his conviction and Jones' hung jury, he is then facing a very long term. And obviously, he knew things about his and Jones' dealings that could have helped the government against Jones. The issue then is really whether he would have changed his mind and become a snitch. And a lawyer who was not beholden in any way to Jones would have said, look, the best thing that I can do for you is for you to think very seriously about what information you could give the government on Jones. That would lead to a decreased sentence for you. Now, that was never done. And any independent lawyer would have done that. Judge, I'm not sure that that's correct based on the given facts in this case wherein we have a declared defendant who said, I am not going to cooperate, who even said years later, it didn't make any difference. The inference to be drawn from that is I had no interest. Therefore, you have to say I don't understand that piece of the record. He said years later, it didn't make any difference. What did make me when he did when he said in his deposition, when Abraham came to me and told me that he didn't represent snitches, did he have a problem there? Years later, in his deposition, he says it didn't matter because I'm not a snitch. That's a declaration that he wasn't then and he isn't now. And I think it didn't matter refers to what? It didn't matter that Abraham didn't represent snitches. In other words, it didn't matter that Abraham was not going to advocate to the government that he should be a snitch. That didn't matter because Wells was not a snitch, was not going to be a snitch. And 11 years later, when his deposition or 10 years later, when his deposition was taken, he still said it didn't matter. Then only at the hearing. So it says, did he ever say in his deposition or declarations and habeas that he would have provided information with regard to Mr. Jones? No, I don't see that in the record anywhere that he said, had I known or had I been presented that option, I would have turned on Danny Jones in a minute. That's not there. I don't see it anywhere. That's why I say we are speculating about this theoretical division. It's an illusion. It's an illusion. And the court went so far as to say to find just a total lack of credibility in his in even the suggestion that that there should have been something more done here because he was just not interested in doing the record. Do I find this deposition? It's in the excerpts of record, Your Honor. In fact, it's in the supplemental excerpt of record record submitted by the government. And there's a there's a reference to it, I believe, too, in the judge's colloquy, if I remember the evidentiary hearing right, that he was not interested or that it didn't matter. But but it's in the deposition. The two things that the court or that the defense. What is disturbing here, and I share in Judge Fletcher's discomfort, is simply that one would have expected any lawyer at that point. After the hung jury. To have at least raised the question, you know, if he didn't didn't want to represent somebody leaving the conflict aside, if he was just somebody who has a principle matter would not represent people cooperating with the government. Then presumably what he should have said was, well, I don't represent people cooperate with the government. But as your lawyer, I want to tell you that is something you ought to consider now. And if you do, you ought to consider finding another lawyer. He didn't even do that. But he did not. And I think if you had a situation where a you had a defendant that was not so predisposed as as to not cooperate with the government, you might have a valid concern. But you can't ignore the fact in this case that Wells had a declared interest in not being a snitch, period. Why, then, should the government or wife, then, should you hold the attorney to the standard to try and change the way he wanted to proceed? In this case, I'm not going to be a snitch. What you are suggesting is that there's some super duty on the part of an attorney to go to a client who's declared that and who is adamant and say that he should have done this or that. And I think that what's disturbing here is that although I presented somebody who was doing this as a matter of principle, this person had a reason to do it other than as a matter of principle, i.e., who was paying his bills. Well, again, I think you have to speculate that he was motivated by that. I think the true reality of the matter is, is that the attorney simply didn't represent those kind of people and made that disclosure up front. And that was perfectly fine with Mr. Wells. In fact, it suited him fine because he was of the same mindset, you know, cooperate with the government. Thank you very much. Thank you. Yes, you have one minute. I think the record has not been accurately stated to you. Mr. Wells asked, as part of his first discussion where this I don't represent snitches come up, what are my options, Mr. Abraham? And Mr. Wells testified he wanted to know what his options were. Mr. Abraham said to him, I don't represent snitches. I don't represent people who cooperate. And that was it. So when Mr. Wells in his deposition was saying, I'm not a snitch, it wouldn't have made a difference. The context of him saying that statement is it wouldn't have made a difference because Mr. Abraham told me he wouldn't do it even if I wanted him to. So I think the context has been misstated to you. And I think that's what the record accurately shows. In addition, Mr. Wells in his declaration in support of his petition said that if I had been advised of this, I would have pursued plea negotiations with the government. It's in his declaration. But he didn't say he would have cooperated. Well, but that depends on whether the government wanted his cooperation. Did he ever say that he had information about Mr. Jones that he would have shared with the government? Did he ever say that? He didn't specifically say that, no. That's quite different. Well, but to get anywhere with the plea after having been convicted, he's going to have to do some cooperation. This record doesn't show that the government never would have done that. Maybe, but not necessarily with respect to Mr. Jones. Well, he'd already been found guilty, so he can't plead guilty to get some benefit. I understand, but not necessarily with respect to Mr. Jones, right? This guy was involved in a major methamphetamine ring, and he may well have had other people to turn on who weren't paying his lawyer bills. But there's nothing to indicate that he had anything to turn on Mr. Jones with or had any interest in doing it. That's true, but the only thing he could have offered with Mr. Jones having to go to a retrial in the same charge as Mr. Wells was charged and convicted of was Mr. Jones. It doesn't specifically say that, but I think it's the reasonable inference and the only one that would be the basis for him cooperating. Thank you. Thank you very much.
judges: B. Fletcher, Hamilton, Berzon